UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------X
UNITED STATES OF AMERICA,

                Plaintiff,                          MEMORANDUM & ORDER
                                                        05-CR-204 (NGG)
   v.

TIEREL DAVIS,

                Defendant.
---------------------------------------------------------------X
GARAUFIS, United States District Judge.

The Defendant, charged with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(1), moves to suppress evidence obtained at the time of his arrest on the grounds that their admission would violate his Fourth and Fifth Amendment rights. A suppression hearing was held before this court on September 12, 2005. For the reasons set forth below, the Defendant's Motion to Suppress is denied.

**I. The Suppression Hearing**

The Government presented one witness, the arresting officer, New York City Police Officer Michael Algieri, who provided uncontroverted testimony regarding the circumstances surrounding the Defendant's arrest. (See September 12, 2005 Hearing Transcript ("Tr.").) Officer Algieri's testimony established the facts as follows. In the early morning of January 9, 2005, Officer Algieri was on patrol at the Queensbridge Houses, a housing development in Queens, New York. (Tr. at 5.) Officer Algieri, who was in a marked police car with his sergeant, saw the Defendant and made eye contact with him. (Id. at 6.) The Defendant then grabbed his waistband and began to run into the adjoining courtyard, which was in front of Building 40-01 12th Street. (Id.) Officer Algieri knew the Defendant because he had arrested

him previously, in August of 2005, for firearm possession. (Id.) Officer Algieri was aware that the Defendant did not live in Building 40-01 or 40-02 of Queensbridge Houses. (Id.) The police officers made a U-turn, parked their vehicle and observed the Defendant enter building 40-01. (Id. at 7.) Officer Algieri and his sergeant then entered building 40-02, the adjacent building, and proceeded up the stairs.[1] (Id.) They ascended the staircase until they were on the stairs between the 5th and 6th floors. (Id. at 12.) From that position, Officer Algieri heard the door that leads from the roof to the roof landing close and saw the Defendant descend from the roof landing (a continuation of the staircase beyond the sixth floor) to the sixth floor landing. (Id. at 13, 24, 31.) Once the Defendant descended to the sixth floor, he immediately ran to an apartment door and began knocking. (Id. at 7, 24-25.) Officer Algieri then approached the Defendant and informed him that he would be arresting him. The Defendant continued to knock on the door, stating that he was visiting somebody. (Id. at 8.) At this point, Officer Algieri came up behind the defendant and handcuffed one of his hands. The Defendant started to resist, and at some point made a statement to the effect of "I'm done."[2] (Id. at 8-9.) The Defendant then placed a hand on his waistband and Officer Algieri reacted by placing his hand over the

---

[1] Buildings 40-01 and 40-02 connect across their roofs. In total, there are five buildings that connect, with 40-01 at one end. (Tr. at 19-20.) Algieri explained that he took a calculated risk entering 40-02 once he saw the Defendant ascending the staircase in 40-01 (which was visible through windows) because he guessed that the Defendant would cut across the roof and descend down the stairs in Building 40-02 or one of the other connected buildings. (Id. at 19-20, 30-31.) The Court finds this explanation credible and reasonable.

[2] At the hearing, Officer Algieri remembered the Defendant saying "I'm done," which, notably, is not the same statement as the Defendant moved to suppress in his moving papers. In the Affidavit in Support of Arrest Warrant, annexed as Exhibit 1 to Defendant's Notice of Motion, supplied by a DEA Agent, the statement the Defendant made at the time of his arrest was "No, no, not again." See Affidavit at 3. The statements are similar to the extent that they likely refer to this being his second arrest for possession of a firearm by the same police officer. Given that over nine months passed between the time of the arrest and the suppression hearing, the Court finds that the differing statements do not call the witness's credibility into question.

Defendant's at the same time as the Defendant pushed a firearm down between his legs. (Id. at 26.) The Defendant struggled with Officer Algieri for a period of time, was eventually arrested, and was then searched, at which point a .45 caliber semi-automatic pistol was recovered from his person. (Tr. at 28; Affidavit in Support of Arrest Warrant, annexed as Exhibit 1 to Defendant's Notice of Motion.)

## II. Discussion

The Defendant seeks to suppress the admission into evidence of the recovered gun and statements he made during the arrest. The Defendant argues that he was arrested and searched without probable cause, and that the evidence obtained as a result of that arrest and search must therefore be suppressed as a violation of his Fourth Amendment rights. See Wong Sun v. United States, 371 U.S. 471, 484-86 (1963) (discussing "fruit of the poisonous tree" doctrine). He further argues that any statements he made during his arrest must likewise be suppressed as violations of Miranda v. Arizona, 384 U.S. 436 (1966). Based on the uncontroverted testimony presented at the suppression hearing, this court finds that admission of this evidence does not violate the Defendant's constitutional rights.

When a police officer "reasonably believes that 'an offense *has* been or is being committed,'" the officer has probable cause to make an arrest. See United States v. Scopo, 19 F.3d 777, 781 (2d Cir. 1994) (citing United States v. Cruz, 834 F.2d 47, 50 (2d Cir. 1987) (emphasis added)). Once there is probable cause to make an arrest, the police are entitled to search the defendant's person. Scopo, 19 F.3d at 781. Here, Officer Algieri testified that he first observed the Defendant ascend the stairs at Building 40-01, and then observed the Defendant descend from the roof landing of Building 40-02. Given the circumstances, Officer Algieri could have come to no other logical conclusion to explain the Defendant's travel from Building

40-01 to 40-02 except that the Defendant crossed the roof.  Therefore, it was reasonable for Algieri to believe that the Defendant had been on the roof.

The Defendant's presence on the roof was a violation of New York City law.  See New York City Penal Code § 140.10[e]-[f].  Officer Algieri was aware that being on the roof was a violation of the law and that the Defendant's actions made him eligible for an "automatic arrest." (Tr. at 8.)  Given that it was reasonable for the arresting officer to conclude that the Defendant had just broken the law, the officer had probable cause to arrest the Defendant.  The resulting search incident to this lawful arrest, therefore, did not violate the Defendant's Fourth Amendment right, and the physical evidence obtained therefrom is not the fruit of a poisonous tree.  See Scopo, 19 F.3d at 781.

It should be noted that the parties' briefs submitted in connection with this motion addressed whether there was "reasonable suspicion to suspect that criminal activity was afoot" such that there occurred a valid Terry stop under the dictates of Terry v. Ohio.  392 U.S. 1 (1968).  A Terry stop has been held to "impinge[] to a lesser extent on Fourth Amendment concerns than does an arrest or search," such that to effectuate a valid Terry stop it is not necessary to meet the stricter standard of probable cause.  See United States v. Bayless, 201 F.3d 116, 133 (2d Cir. 2000).  To determine whether the "reasonable suspicion" standard has been met, "the reviewing court must consider the totality of the circumstances surrounding the stop . . . [and] must evaluate those circumstances through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training."  Id.  (internal citations and quotations omitted).

Notwithstanding the court's finding that Officer Algieri had probable cause to arrest the defendant based on his illegal presence on the roof, the Officer also without question reasonably

suspected that criminal activity was afoot based on the totality of the circumstances. He made eye contact with the Defendant, with whom he was familiar from a previous gun possession arrest, at which point the Defendant touched his waistband and immediately fled, and then correctly presumed that the Defendant would try to allude law enforcement by entering one building and exiting another. Given this scenario, Officer Algieri acted reasonably in detaining the Defendant and his stop of the Defendant is found to be a valid search under Terry v. Ohio. It follows that the seizure of the gun does not violate the Defendant's Fourth Amendment right. "[W]hen an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, the officer may conduct a patdown search to determine whether the person is in fact carrying a weapon." Minnesota v. Dickerson, 508 U.S. 366, 373 (1993) (citing Terry, 392 U.S. at 24) (internal quotations omitted).

The Defendant also moves to suppress a statement allegedly made at the time of his arrest. Defendant moved to suppress the statement "no, no, not again" on the grounds that it's procurement violated Miranda v. Arizona. (See Defendant's Memorandum of Law in Support at 4-5.) As there was no testimony given that would suggest that the Defendant was subjected to "express questioning or its functional equivalent," there can be no finding that he was the subject of custodial interrogation. See Rhode Island v. Innis, 446 U.S. 291, 300-301 (1980). Rather, based on Officer Algieri's uncontested testimony, any statement made by the Defendant was spontaneously given, and Miranda has not been triggered. See id. Thus, given that the officer had probable cause to arrest the Defendant, and that Miranda has not been violated, the

Defendant's Motion to Suppress the statement is likewise denied.[3]

**III. Conclusion**

Based on the foregoing reasons, the Defendant's Motion to Suppress is hereby denied.

SO ORDERED.

Dated: September 19, 2005 /s/ Nicholas Garaufis
       Brooklyn, NY                                                   Nicholas G. Garaufis
                                                                              United States District Judge

---

[3] Defendant also suggests that the statement should be excluded because of the government's failure to provide the Defendant notice of its intention to admit the statement as required by NY CPLR § 710.30(1)(a). This argument is of no merit as subsection (3) of that provision states that evidence will be admissible "despite the lack of such notice, [if the defendant has] moved to suppress such evidence and such motion has been denied." NY CPLR § 710.30(1)(a).